UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

-------------------------------------------------------
                                        :
ELAINE L. CHAO, Secretary of Labor,     :       CASE NO. 5:04-CV-0443
United States Department of Labor,      :
                                        :
              Plaintiff,                :
                                        :
vs.                                     :       FINDINGS OF FACT AND
                                        :       CONCLUSIONS OF LAW
AKRON INSULATION & SUPPLY,              :       GRANTING JUDGMENT FOR
INC., *et al.*,                         :       PLAINTIFF
                                        :       [Resolving Doc. Nos. 33, 34]
              Defendants.               :
                                        :
-------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

On March 4, 2004, Plaintiff Secretary of Labor, United States Department of Labor ("Secretary")

sued Akron Insulation & Supply, Inc. ("Akron Insulation") and Dino Lombardi ("Lombardi").  Plaintiff

alleged that Defendants violated the Fair Labor Standards Act ("FLSA") of 1938, 29 U.S.C. § 201, *et

seq.*, *as amended*.

On October 21, 2004, the Court held a bench trial.  On December 13, 2004, the parties submitted

Proposed Findings of Fact and Conclusions of Law.  On December 20, 2004, Defendants responded to

the Plaintiff's proposed findings.

After observing the demeanor of the witnesses and considering the evidence and parties'

arguments, the Court grants judgment for Plaintiff.  The Court holds that Defendants violated the FLSA in

failing to pay shop time, travel time, and overtime compensation.  Accordingly, the Court grants Plaintiff

-1-

Case No. 5:04-CV-0443
Gwin, J.

an injunction ordering Defendants to comply with the overtime compensation and record-keeping sections

of the FLSA.  Furthermore, the Court awards Plaintiff an injunction against the continued withholding of

back wages in an amount of $94,830.96 plus interest.

## I. BACKGROUND

This case concerns whether Defendants violated the FLSA by failing to pay forty-five employees

for overtime compensation for shop time and travel time from September 1, 2001 through August 31,

2003.  During the bench trial, several witnesses testified.  Five witnesses were former or current employees:

(1) Tevell Moss, a former carpenter; (2) Mitchell Westfall, a former crew chief; (3) Jacob Weyrick, an

installer who is now part-time; (4) Billy Kreitzburg, a current installer; and (5) John DiMichele, a current

foreman.  Three other witnesses testified at the bench trial:  (1) Defendant Lombardi, President of Akron

Insulation; (2) Eileen Smoot ("Smoot"), Akron Insulation's bookkeeper; and (3) Wage and Hours

Investigator Dale Zimmerman ("Zimmerman").

In July 2003, Zimmerman began investigating Akron Insulation's payroll practices from September

1, 2001 through August 31, 2003.  He added the total hours worked from each time card based upon

clock-in and clock-out times.  If there was no clock-out time on the time card, Zimmerman used the hand-

written time.  After adding the hours worked, Zimmerman subtracted half an hour for lunch and gave credit

for compensation that Akron Insulation paid.  If employees worked more than 35.5 hours per week, then

Defendants did not violate the FLSA, and Plaintiff did not calculate any back wages.  However, if the

employees worked more than 35.5 hours in one work week,  Defendants violated the overtime provisions.

Plaintiff contends that Defendants failed to accurately record the hours worked and failed to correctly pay

Case No. 5:04-CV-0443
Gwin, J.

overtime compensation.  Plaintiff further calculated back wages for overtime compensation, totaling $94,830.96 for more than 4,700 of hours worked.[1]

In contrast, Defendants maintain that no overtime compensation is owed, arguing that Plaintiff's calculations overestimate the hours worked. Defendants' theory of the case is that the employees clocked-in early voluntarily to drink coffee and socialize.  Defendants complain that Plaintiff's methodology was flawed for relying on the clock-in and clock-out times on the time cards.  Instead, Defendants argue that the employees recorded the hours worked in their own hand-writing, even though the time cards show that employees often clocked-in one or two hours before the hand-written times.  However, Defendants offer no records documenting the precise number of hours that the employees worked.

The Court makes the following findings of fact and conclusions of law under Rule 52 of the Federal Rules of Civil Procedure.

## II. FINDINGS OF FACT

Defendant Akron Insulation is a corporation whose sole fixed place of business -- the shop -- is located at 1985 Manchester Road, Akron, Ohio, 44134, which is in the Northern District of Ohio. Defendants install insulation in residential and commercial buildings, which are the job sites.

As President of Akron Insulation, Lombardi acted directly or indirectly in Akron Insulation's interest in relation to its employees, as an employer within the meaning of the FLSA.  Lombardi adopted the company policies challenged herein, and he knew of their actual implementation.

---

[1] At the conclusion of his investigation, Zimmerman found that Akron Insulation owed $95,426.74.  Akron Insulation's bookkeeper, Eileen Smoot, identified some mathematical errors in Zimmerman's work, which he corrected. According to Plaintiff's Revised Proposed Findings, Akron Insulation owes  $94,830.96.

Case No. 5:04-CV-0443
Gwin, J.

Defendants are engaged in the performance of related activities for a common business purpose, constituting an enterprise within the meaning of Section 3 (r) of the Act.  The enterprise is engaged in commerce or in the production of goods for commerce and has an annual dollar volume in excess of $500,000 under Section 3 (s)(1)(A).

### A. Akron Insulation's Employees

Akron Insulation hires part-time and full-time employees.  Some of the employees are union members, who belong to unions including (1) Plasterer's Local 109; (2) Plasterer's Local No. 80; (3) Laborer's Local No. 894; and (4) Laborer's Local No. 310.  Although Akron Insulation hires union employees, testimony was conflicting whether Defendants were signatories to the collective bargaining agreements.  Lombardi testified that Akron Insulation is a signatory to the agreements.  Tr. at 242.  However, Lombardi's counsel stated elsewhere that Defendants were not signatories to any collective bargaining agreements.  Tr. at 218.

### B. Shop Time

The Court finds that Lombardi requires full-time employees to report to the shop before going to the job site.[2]  In reporting to the shop each workday, the insulation workers have several required tasks: (1) clocking in; (2) receiving their assignments; (3) meeting their fellow crew members; (4) to the extent necessary, collecting and loading materials and equipment on the trucks that will be needed at the job site; and (5) picking up the company-owned trucks to travel to the job site.  Employees perform these activities at Lombardi's request.  Lombardi testified that he is the person who "gets the people out" each morning.

---

[2] This action does not involve commuting time from home to the job site, which is not compensable under the FLSA.

-4-

Case No. 5:04-CV-0443
Gwin, J.

Tr. at 260.  Each morning, Lombardi makes crew assignments based upon which employees are present and the amount of workers needed to finish a job.  Depending upon who shows up on a given day, Moss testified that he may switch crews.  John DiMichele, a foreman, explained that he would wait to see who was coming in each day because he was "supposed to have so many people to a crew" and "a lot of people say they're coming in and they don't."  Tr. at 197.  Lombardi gives the job assignments verbally or in writing on a job ticket.

Employees also load company trucks with materials, insulation, mixing machines, and other equipment as needed.  Akron Insulation has one loading dock, and three or four company-owned trucks.  Numerous employees participate in loading the trucks, though the same employees do not participate each workday.

While at the shop in the morning, employees drink coffee or socialize during waiting time.  Employees may wait for their assignments, wait for members of their crew to arrive, wait for a truck to be loaded, and wait for the loading dock to become available.  Employees may wait as little as ten minutes and as long as one hour.

Defendants argue that these forty-five employees voluntarily clocked-in early.  As evidence, counsel for Defendants called three employees to testify, asking them if they clocked in voluntarily and drank coffee at the shop.  Weyrick, Kreitzburg, and DiMichele answered affirmatively.  Tr. at 161, 173, 189.  However, these employees also testified that they were performing tasks in the shop that were clearly for Akron Insulation's benefit.  Weyrick testified that he receives his job assignment, picks up his job ticket, drives co-workers to the job site, and receives gas money from Defendants.  Tr. at 166, 170.  Kreitzburg

-5-

Case No. 5:04-CV-0443
Gwin, J.

stated that he receives his job assignment and loads trucks at the shop.  Tr. at 179.  DiMichele testified that

he was waiting for crew members to arrive, helped load trucks, and would arrive even earlier for a big job.

Tr. at 191, 197.  Based upon this testimony, the Court finds that any waiting time in the shop is at the

employer's request and for its benefit and not for the benefit of the employees.  Ample testimony shows

that Lombardi required employees to report at specific times and perform several required tasks before

departing from the shop for the job site.  The time cards show that employees clocked in more than one

hour on a single day.  The Court finds it incredible that employees would voluntarily clock-in early to

socialize and drink coffee for that much time.

Several employees, including DiMichele, live in apartments above the shop and that they often spent

time in the shop socializing.  As to the employees living above the shop, Defendants argue that their hours

were more likely voluntary and that no overtime compensation should be awarded as to these employees.

While the record does not disclose which employees lived on the premises during the relevant time period,

the Plaintiff asserts that only three employees had the shop location as their address during the pertinent

time period:  John Baranich, Michael Schlagenhauser, and Donald Weyrick.  The Court does not find

Lombardi's testimony persuasive.  DiMichele, although stating that he was living on the premises, testified

that he performed tasks in the shop in the morning after clocking-in, including loading trucks and receiving

his assignment.  Even for employees living on the premises, the Court heard sufficient evidence that they

were working in the shop after clocking-in and were not merely clocking-in voluntarily for their own benefit.

After loading the trucks and receiving crew assignments, crews depart for the job sites.  To get

from the shop to the job site, some employees travel in company-owned trucks, carrying tools, materials,

-6-

Case No. 5:04-CV-0443
Gwin, J.

and supplies that are necessary to perform work at the job sites.  Other employees ride together in their

cars to the job site.  At Lombardi's request, employees  sometimes drive other crew members from the

shop to the job site.  In such an instance, Lombardi gives employees gas money, and employees pick up

gas vouchers from the shop.

At the end of the day, full-time employees travel from the job site to the shop.  They return the

trucks, materials, and equipment to the shop.  Lombardi tells employees what time to report to the shop

the next morning.  They update Lombardi about the progress on the job, materials needed at the job site,

and any problems that they encountered.  At Lombardi's request, the crew leader may wait from ten

minutes to up to one hour before speaking to him.  If the employees reached the shop before the office

closed, they clocked out.  Otherwise, they wrote the time that they finished working in their own

handwriting the next day.

*C. Inaccurate Records*

The time cards submitted into evidence have clock-in times, which represent the times when the

employees reported to the shop.  Additionally, the time-cards contain the employees' hand-written times.

The Court finds that the hand-written times constitute the hours that the employees spent at the job site.

The Court further finds that Plaintiff correctly measured the shop and travel time as the difference between

the clock-in times and the hand-written times, while giving credit for the hours that Defendants paid.

Typically, Defendants paid employees for the hand-written times, although sometimes they paid

for hours in excess of the hand-written times (whether or not Lombardi initialed the time card).  Often,

Defendants did not properly pay overtime compensation for shop or travel time, which occurred before

Case No. 5:04-CV-0443
Gwin, J.

the employees arrived at the job site.  Defendants' primary defense is that the clock-in times are not

compensable because the employees voluntarily reported early to drink coffee and socialize.  As to the

accuracy of the time cards, the Court finds that Defendants failed to maintain records of the number of

hours worked per each workday and workweek.

### D. Travel Time

As to travel time, the parties disagree about whether travel time is compensable as to union

employees and whether Defendants paid non-union employees for travel time.  Lombardi admitted that

Defendants did not pay travel time to the union employees.  Tr. at 247.  Union employees, including

Westfall, testified that the Defendants did not pay for travel time on union jobs from the shop to the job site.

Instead of paying travel time to union employees, Defendants contend that collective bargaining agreements

trumped the FLSA and did not require payment of travel time.  The Court finds that Defendants did not

pay travel time to union employees.  As discussed below, the Court concludes that the FLSA requires

payment of travel time from the shop to job site regardless of any collective bargaining agreement.

As to non-union employees, the parties disagree about whether Defendants have paid travel time

from the shop to the job site.  Lombardi claims that Defendants paid non-union employees for travel time

because Akron Insulation paid the hand-written times on the time cards.  Tr. at 255, 265.  Defense

witnesses Lombardi, Weyrick, Kreitzburg, and DiMichele testified that the hand-written times represented

the times that the employees left and returned to the shop.  However, this testimony is not credible.

After reviewing the time cards, the Court finds that the hand-written times represented the hours

spent at the job site and typically did not include travel time.  Employees consistently clocked-in before

-8-

Case No. 5:04-CV-0443
Gwin, J.

6:00 and 6:30 in the morning.  Generally, the hand-written times began one to two hours later.  Some of the job sites were located far from the shop, requiring travel time of one hour or more, which explains why the employees' hand-written times often occurred after 7:30 in the morning.  Given the amount of travel time necessary to get from the shop to the job site, the clock-in times represent the time that the employees reported to the shop, and the hand-written times represent time spent at the job site.  The Court finds credible testimony from numerous employees, including Moss and Kreitzburg, who stated that the hand-written times on the time cards were the times that the employees spent at the job site.  Testimony from Lombardi, Kreitzburg, Weyrick, and DiMichele is simply implausible.  When Defendants only paid employees for the hand-written times, they did not pay travel time.[3/]

*E. Official Start Time*

The parties dispute whether the employees were working after they clocked-in.  Defendants argue that the hand-written times are the hours worked.  Defendants further assert that the official start time was 7:30 in the morning and that employees would not be paid for hours worked before 7:30 unless Lombardi initialed their time card.  Plaintiff argues that Defendants' so-called official start time is irrelevant to the investigation because the evidence establishes that the employees were working after they clocked-in.  Plaintiff is correct.

The Court finds that employees were actually working after they clocked-in, which was often well

---

[3/] From the time cards, Akron Insulation paid some employees for travel time because they paid for hours worked in excess of the hand-written times.  To the extent that Defendants paid travel time, Plaintiff gave credit for hours paid in its investigation.

Case No. 5:04-CV-0443
Gwin, J.

before 7:30 in the morning.[4/]  Employees had to report before 7:30 to ensure that they arrived at the job site on time.  Westfall testified that Lombardi "told us that we had to be there at 6:00 every morning on a union job." Tr. at 61, 70.  Moss stated that he arrived between 6:00 and 6:15 in the morning becuase the crews depart from the shop before 7:30 and any employee arriving at 7:30 would miss the crew.  Once at the shop, the employees performed tasks for the employer's benefit.          Although Weyrick, Kreitzburg, and DiMichele testified that the official start time was 7:30 in the morning, they also testified that they performed preparation tasks in the shop, which occurred before 7:30.  Kreitzburg testified that he cannot show up at 7:30 in the morning because he wants to find out what he needs for the job, discuss the job with the rest of his crew, and get his daily routine together.  Weyrick's time cards showed that he clocked in as early as 5:00 in the morning on some days, and his testimony regarding the official start time is not credible.  DiMichele testified that he arrives early on the days of big jobs.

   *F. Initialing Time Card*

   Similarly, the Court discounts Lombardi's testimony that employees were working before 7:30 only if Lombardi signed their time card.  Defendants argued that time cards without signatures showed that employees were not working, even on days when they clocked-in well before 7:30.  This theory is not credible for three reasons.

   First, the time cards show that Defendants paid employees for hours worked before 7:30, even though the time card had no initials.  The Court finds that Defendants did not consistently follow their so-called policy of initialing time cards for hours worked before 7:30.

_____

   [4/] Additionally, numerous time cards include hand-written times after 7:30, which further undermines Lombardi's testimony that 7:30 is the official start time.

Case No. 5:04-CV-0443
Gwin, J.

Second, testimony showed that Lombardi routinely instructed employees to arrive at the shop before 7:30 in the morning and asserted that Lombardi only signed the time card if an employee reported earlier than instructed.  For example, Westfall stated that Akron Insulation required a signature only if the employee showed up before the appointed time Lombardi that told him for that day, which was usually before 7:30.  Tevell Moss testified that Dino "rarely" signed his time card, even though he typically arrived at 6:00 or 6:30.  Despite Lombardi's testimony about the official start time, the record shows that he often required employees to report before 7:30 in the morning.

Third, even if Lombardi had a consistent policy, which he does not, the issue is whether employees were working after they clocked in and if Defendants compensated the employees for all hours worked.  Defendants cannot cower behind a nominal policy when the employer benefits from the work performed and requires the work.  Because the employees were working once they clocked-in at the shop, Defendants' so-called official start time is irrelevant, and the hours are compensable.

*G. Hours Paid*

Akron Insulation typically paid the employees for the hand-written times on the time cards, which represented the hours that the employees spent at the job site.  Thus, Akron Insulation's payroll practices could exclude time spent:  (1) working in the shop in the morning or afternoon; and (2) traveling from the shop to their job sites and from the job site to the shop.  Zimmerman testified that uncompensated hours, when added to the compensated hours, often resulted in an employee working an excess of forty hours in a week, entitling the employee to overtime compensation at time and one half of the regular rate.  Plaintiff argued that Defendants failed to pay overtime compensation.  Even when Defendants paid overtime

-11-

Case No. 5:04-CV-0443
Gwin, J.

compensation, the Plaintiff argues that they paid it at an incorrect rate.

## II. CONCLUSIONS OF LAW

The Court makes the following conclusions of law.

This Court has jurisdiction of this action seeking an injunction under the FLSA. 29 U.S.C. § 217. The Plaintiff seeks an injunction against future violations of the overtime and record-keeping provisions as well as injunction against the continued withholding of of $ 94,830.96 in back wages.

Akron Insulation is an "enterprise" in that it has employees handling or working on goods moved in commerce. Akron Insulation has an annual business volume exceeding $500,000. *See* 29 U.S.C. §§ 203 (r) & (s)(1)(A).

Akron Insulation and Lombardi are employers within the meaning of the Act. *See* 29 U.S.C. § 203(d).

The overtime pay and record-keeping provisions apply to Akron Insulation's employees. *See* 29 U.S.C. §§ 207(a) (1), 211(c), & 215(a)(2) & (5).

As discussed below, Defendants have violated and are continuing to violate the Act in its provisions for record-keeping and overtime compensation as to shop time and travel time.

*A. Shop time and Travel Time are Hours Worked.*

The Court concludes that shop time and travel time from the shop to the job site, as described above, are compensable under the FLSA.

Under the FLSA, all hours worked must be compensated. 29 U.S.C. §§ 206 & 207. "Work" is defined as "physical or mental exertion (whether burdensome or not) controlled or required by the

Case No. 5:04-CV-0443
Gwin, J.

employer and pursued necessarily and primarily for the benefit of the employer and his business." *Tenn.*

*Coal, Iron & R.R. Co. v. Muscoda Local No. 123*, 321 U.S. 590, 598 (1944); Chao v. Tradesmen Int'l,

Inc., 310 F.3d 904, 907 (6th Cir. 2002).  Through testimony and exhibits, such as time cards, the

employees can establish generally the hours that they worked.  *See Bueno v. Mattner*, 829 F.2d 1380,

1387 (6th Cir. 1987), *cert. denied*, 486 U.S. 1022 (1988).

Under the FLSA, an activity is compensable when it is an integral and indispensable part of the

principal activities."  *Steiner v. Mitchell*, 350 U.S. 247, 256 (1956); *see Mitchell v. King Packing Co.*,

350 U.S. 260, 261-63 (1956); *Brock v. City of Cincinnati*, 236 F.3d 793, 803 (6th Cir. 2001); *see also*

29 C.F.R. § 790.8 (c) ("Among the activities included as an integral part of a principal activity are those

clearly related activities which are indispensable to its performance.").  Employees may have more than one

principal activity, and such activities are is not limited to the predominant activity.  *See* 29 C.F.R. § 790.8

(a).  The term "principal activities" should be construed "liberally in the light of the foregoing principles to

include any work of consequence performed for an employer, not matter when the work is performed."

29 C.F.R. § 790.8 (a); *Duchon v. Cajon Co.*, No. 86-4009, 1988 U.S. App. LEXIS 2167, at * 10 (6th

Cir. Feb. 22, 1988) (per curiam) (unpublished opinion).  Additionally, the FLSA should be construed

broadly "so as to give effect to Congress's intentions and policies."  *Salyer v. Ohio Bureau of Workers'*

*Comp.*, 83 F.3d 784, 786 (6th Cir. 1996); 29 C.F.R. § 790.2 (a).

The Portal to Portal Act amends the FLSA, excluding activities that are "preliminary to or

postliminary to said principal activity or activities" from compensation. 29 U.S.C. § 254 (a)(2). The Portal

to Portal Act excludes only those activities that are undertaken "for [the employees'] own convenience,

-13-

Case No. 5:04-CV-0443
Gwin, J.

not being required by the employer and not being necessary for the performance of their duties for the

employer." *Dunlop v. City Elec., Inc.*, 527 F.2d 394, 398-99 (5th Cir. 1976).  The FLSA exemptions

should be narrowly construed, and the employer has burden of proving exemption applies.  *Herman v.*

*Palo Group Foster Home*, 183 F.3d 468, 472 (6th Cir. 1999).

In cases when the employer has inaccurate records, as here, the burden initially is on the plaintiff

to show that the employees performed work for which they were not paid.  *Anderson v. Mt. Clemens*

*Pottery Co.*, 328 U.S. 680, 687-88 (1946), *superseded by statute on other grounds*, 29 U.S.C. § 254.

If the plaintiff produces sufficient evidence to establish the amount and "extent of that work as a matter of

just and reasonable inference," then the "burden shifts to the employer to come forward with evidence of

the precise amount of work performed or with evidence to negative the reasonableness of the inference to

be drawn from the employee's evidence."  *Herman v. Palo Group Foster Home*, 183 F.3d 468, 472

(6th Cir. 1999) (internal quotation marks omitted); *U.S. Dep't of Labor v. Cole Enters.*, 62 F.3d 775,

779 (6th Cir. 1995).

Plaintiff argues that the shop time and travel times are indispensable to the employees' principal

activities, and the shop time and travel time are compensable under the FLSA.  In contrast, Defendants

argue that the shop time and travel time are preliminary or postliminary activities that are excluded from

hours worked under the Portal-to-Portal Act.  After considering the record in this case, the Court

concludes that the activities performed in the shop were an indispensable part of the employees' principal

activities.  Additionally, the Court finds that travel from the shop to the job site and vice versa was integral

to the employees' principal activities.

-14-

Case No. 5:04-CV-0443
Gwin, J.

### 1. Shop Time

### a. Preparation Activities

When shop activities are an indispensable part of an employees' principal activities, the shop time is compensable. Examples of activities that are integral to principal activities include reporting to a designated meeting place, receiving assignments, and loading equipment. *See Herman v. Rich Kramer Constr., Inc.*, No. 97-4308WMS, 1998 U.S. App. LEXIS 23329, at *7 (8th Cir. Sept. 21, 1998) (per curiam) (unpublished opinion) (holding that the shop time was compensable when an employer required employees to report to a shop); *Dunlop v. City Elec., Inc.*, 527 F.2d 394, 400 (5th Cir. 1976) (holding that an electrician's pre-work activities of preparing supply requests, loading trucks, and cleaning equiptment are an integral part of an employee's principal activities); *Hodgson v. Frisch's Dixie, Inc.*, No. 6641, 1971 U.S. Dist. LEXIS 12029, at *11 (W.D. Ky. Aug. 16, 1971) (concluding that the cleaning equipment and preparing for the next day were compensable activities), *aff'd*, 469 F.2d 82 (6th Cir. 1972) (per curiam); *O'Brien v. Encotech Constr.*, No. 00-CV-1133, 2004 U.S. Dist. LEXIS 4696, at *17 (N.D. Ill. Mar. 23, 2004) (holding that gathering tools, supplies, water, and paperwork were integral activities that benefitted the employer and were integral to principal activities); *Dole v. Enduro Plumbing, Inc.*, No. 88-7041-RMT(Kx), 1990 U.S. Dist. LEXIS 20135, at **12, 14 (C.D. Cal. Oct. 10, 1990) (holding that plumbers' activities of meeting workers, collecting tools, and traveling in company-owned trucks were compensable); 29 C.F.R. § 790.7 (c).

The Court concludes that the shop activities were an indispensable part the employees' principal activities. Lombardi requires employees to report at specific times each day. At the shop, employees

-15-

Case No. 5:04-CV-0443
Gwin, J.

assembled work crews, depending upon who showed up, received their assignments, loaded trucks with materials and equipment, and traveled to the job sites for the day.  At the end of the day, employees returned equipment and trucks to the shop, and crew leaders reported to Lombardi concerning the day's work.  Because these activities are integral to the employees' predominant activities associated with installing insulation, they are not excluded as preliminary or postliminary activities under the Portal-to-Portal Act.  *See Herman v. Rich Kramer Constr., Inc.*, No. 97-4308WMS, 1998 U.S. App. LEXIS 23329, at **6-7 (8th Cir. Sept. 21, 1998) (per curiam) (unpublished opinion); 29 C.F.R. § 790.7 (c).

　　b. Waiting Time

　　Defendants maintain that their employees voluntarily clocked-in early to drink coffee and socialize and were not working.  Defendants' arguments fail.  To the extent that the employees were waiting (and drinking coffee or socializing) in the morning, they waiting for the employer's benefit and could not use the time for their own purposes.

　　Depending upon the circumstances, waiting time is compensable when the employees are "engaged to wait" because such waiting is an integral part of their principal activities.  29 C.F.R. § 785.14 (internal quotation marks omitted); 29 C.F.R. § 785.15 (including examples of a messenger working on a crossword waiting for assignments and a factory worker talking while waiting for the machinery to be fixed).  An employer can hire an employee to do nothing but wait for something to happen, and that time is compensable when the employee is engaged to be waiting for the employer's benefit.  *E.g., Armour & Co. v. Wantock*, 323 U.S. 126, 133 (1944) ("Readiness to serve may be hired."), *reh'g denied*, 323 U.S. 818 (1945); *Cent. Mo. Tel. Co. v. Conwell*, 170 F.2d 641, 645-46 (8th Cir. 1948) (holding that time

-16-

Case No. 5:04-CV-0443
Gwin, J.

while employees were sleeping was compensable because the employer required them to be on the premises and they were "ready to serve" because bells would awaken them to respond to calls).

The Court applies a two-part test to determine whether waiting time is compensable. First, the Court considers whether wait time is predominantly for the employer's benefit, and waiting time benefits an employer if the employer requests it. *See Wirtz v. Sullivan*, 326 F.2d 946, 948-49 (5th Cir. 1964) (requiring an employer to compensate employees for waiting time while machines were being fixed). Second, the Court considers whether the employees can effectively use the waiting time for their own purpose. *See Mireles v. Frio Foods, Inc.*, 899 F.2d 1407, 1413-14 (5th Cir. 1990) (concluding that periods of waiting time up to forty-five minutes during assembly line shut down were compensable). If employees are "completely relieved from duty" for a period that is long enough for them to use the time for their own purposes, then they are off duty, and the time is not compensable. 29 C.F.R. § 785.16 (a).

In this case, to that extent that employees had waiting time in the shop in the morning, the waiting time is integral to their principal activities. The waiting time predominantly benefitted Akron Insulation. Lombardi required employees to report to the shop at designated times before departing for the job site to receive assignments, assemble crews, load company-owned vehicles, and drive the trucks to the job sites. Furthermore, although employees may have been drinking coffee or socializing while waiting, they could not effectively use this time for their own purpose. The waiting time occurred in short intervals in the morning, and Lombardi required full-time employees to report to the shop before going to the job sites. Under the circumstances described, the waiting time is compensable under the FLSA because it is an indispensable part of the employees' principal activities.

-17-

Case No. 5:04-CV-0443
Gwin, J.

> *2. Travel All in A Day's Work*

After Defendants required employees to report to the shop, travel from the shop to the job site is compensable as hours worked, regardless of whether they are union members.

Travel that is an indispensable part of performing one's job is principal activity is compensable as hours worked.  "Where an employee is required to report at a meeting place to receive instructions or to perform other work there, or to pick up and to carry tools, the travel from the designated place to the work place is part of the day's work, and must be counted as hours worked regardless of contract, custom, or practice." 29 C.F.R. § 785.38.  Once an employer requires employees to report to a designated meeting place, such as the shop, travel time to jobs sites are part of a day's work and compensable under the FLSA. *See Herman v. Rich Kramer Constr., Inc.*, No. 97-4308WMS, 1998 LEXIS 23329, at \*4, \*7 (8th Cir. Sept. 21, 1998) (per curiam) (unpublished opinion); *Ladegaard v. Hard Rock Concrete Cutters, Inc.*, No. 00 C 5755, 2004 U.S. Dist. LEXIS 16288, at \*\*21-22 (N.D. Ill. Aug. 18, 2004) (finding travel time from yard to job site compensable when employees perform preparation work in the yard before going to the job site); *O'Brien v. Encotech Constr.*, No. 00-CV-1133, 2004 U.S. Dist. LEXIS 4696, at \*\*14-15 (N.D. Ill. Mar. 23, 2004) (holding that travel time from the yard to the job site was compensable after the employees performed preparation activities in the yard); *Breen v. Concrete By Wagner, Inc.*, No. 98 C 3611, 1999 U.S. Dist. LEXIS 17401, at \*37 (N.D. Ill. Nov. 4, 1999) (concluding that the employer violated the FLSA for failing to pay travel time from shop to job site and vice versa when the employer required employees to report to the shop).

Lombardi required his employees to report to the shop before traveling to the job sites.  After

-18-

Case No. 5:04-CV-0443
Gwin, J.

reporting to the shop, employees prepared for the workday by receiving assignments, assembling crews, and loading trucks.  When the employees traveled from the shop to the job site, they transported equipment, materials, company-owned trucks, or other employees on their crews to the job site.  Under these circumstances, travel is an indispensable part of the employees' principal activities, and the travel time constitutes hours worked.  Defendants violated the FLSA to the extent that they failed to pay employees for travel time from the shop to the job site.

### B. Custom or Practice Cannot Trump the FLSA

Next, the Court considers Defendants' argument that their custom or practice trumps the FLSA. Defendants advance this argument in two forms.  First, Defendants assert that it pays employees only for hand-written times on the time cards because those are the hours that the employees actually worked. Second, Defendants contend that Akron Insulation has an official start time of 7:30 in the morning and that employees working before 7:30 will not be compensated for hours worked unless Lombardi signs the employees' time card.  Both of these arguments are incorrect.  Neither practice could trump the FLSA.

As to their first argument, Defendants assert that they do not have to pay employees who clock-in voluntarily to socialize.  If the employees did not engage in any work, Defendants would not have to compensate an employee when he voluntarily clocks-in.  "[E]mployees who voluntarily come in before their regular starting time or remain after their closing time, do not have to be paid for such periods *provided, of course, that they do not engage in any work*."  29 C.F.R. § 785.48 (emphasis added).  However, the employees were working after they clocked-in because the shop time and travel time are integral to the employees' principal activities.  Also, any waiting time is included as hours worked because the waiting time

-19-

Case No. 5:04-CV-0443
Gwin, J.

was for the employer's benefit.  Defendants' practice of only paying employees for time spent at the job

site violates the FLSA.  Akron Insulation must pay its employees for shop time and travel time from the

shop to the job site.

Turning to their second contention, Defendants' practice of only paying employees for hours

worked after 7:30 in the morning cannot trump the FLSA becuase the employees were actually working

during the shop time and travel time, which often occurred before 7:30.  Defendants cannot cower behind

an official start time as an excuse for refusing to pay employees for work that they required.

An employer cannot decide to pay employees only for a portion of the hours worked.  *See*

*Herman v. Fabri-Centers of Am.*, 308 F.3d 580, 592 (6th Cir. 2002) (concluding that an employer's

pay practice cannot trump the FLSA), *cert. denied*, 537 U.S. 1245 (2003); *U.S. Dep't of Labor v. Cole*

*Enters.*, 62 F.3d 775, 779 (6th Cir. 1995) (holding that the defendant failed to keep accurate record of

hours worked when an employer told employees to record scheduled shift hours rather than the ones

actually worked and the employer only paid an employee for shift hours); *Duchon v. Cajon Co.*, No. 86-

4009, 1988 U.S. App. LEXIS 2167, at **12-13  (6th Cir. Feb. 22, 1988) (per curiam) (unpublished

opinion) (requiring an employer to pay for all hours worked, despite the employer's policy that it would

not pay for overtime compensation until after 5:00 in the evening); *Hodgson v. Am. Concrete Constr. Co.*,

471 F.2d 1183, 1185-86 (6th Cir. 1973) (mandating that the employer pay for all hours worked when the

employer required employees to report as early as 7:00 in the morning to load trucks and travel but the

employer paid employees only at 8:00 when they arrived at the construction site), *cert. denied*, 412 U.S.

949 (1973); *Wirtz v. Edisto Farms Dairy*, 242 F. Supp. 1, 9 (E.D.S.C. 1965) (rejecting an employer's

Case No. 5:04-CV-0443
Gwin, J.

defense that it had a policy of refusing to compensate more than forty hours worked per week).

Defendants' purported policy of paying employees only for work after 7:30 in the morning violates the

FLSA when employees are actually working before 7:30.  Defendants must compensate employees for

all hours worked.

     *C. Union Members' Travel Time*

     Finally, the Court addresses Defendants' argument that the applicable collective bargaining

agreements do not require compensation of travel time and that this preempts the requirements of the

FLSA.  Tr. at 241-245, 270-73.  The Defendants argue that the Plaintiff should subtract $39,653.16,

which is supposedly the amount attributable to the employees who were union members.  The Defendants'

argument fails for several reasons.

     First, the text of the collective bargaining agreements do not expressly exclude compensation for

travel time.  For example, the agreements for Plasterer's Local No. 80 and Laborer's Local 894 contain

no references to travel time.  The Laborer's Local No. 310 collective bargaining agreement actually

requires travel time to be paid:  "There shall be no traveling time allowed in connection with employment

within the confines of Cuyahoga and Geauga Counties, Ohio, *except when men are moved from shop*

*to job, or job to job during work hours*."  Def. Ex. H (emphasis added).  Finally, the agreement for

Plasterer's Local No. 109 states that "no travel pay will be paid to any job site," but it does not define

"travel pay."  Def. Ex. K.  None of these collective bargaining agreements exclude compensation for travel

time from the shop to the job site.

     Second, it is not clear whether Defendants are even signatories to the collective bargaining

-21-

Case No. 5:04-CV-0443
Gwin, J.

agreements.  Lombardi testified that Akron Insulation is a signatory to Plasterer's Local 80, Laborer's

Local 894, and Plasterer's Local 109.  Tr. at 242.  However, counsel for Defendants stated on the record

that Defendants were not signatories to the collective bargaining agreements.  Tr. at 72-73.  If Akron

Insulation is not a signatory to the collective bargaining agreement, it cannot enforce its provisions.

However, the Court does not need to determine whether Defendants were signatories of the collective

bargaining agreements because such an agreement cannot trump the overtime provisions of the FLSA.


Third, assuming that the agreements excluded payment of travel time from the shop to the job site,

which none of these seem to do, such agreements would be unenforceable because they would conflict with

the FLSA.  "[E]mployers and employees may resolve whether certain activity is 'work' through a collective

bargaining agreement, as long as the agreement comports with the FLSA."  *Leahy v. City of Chicago*,

96 F.3d 228, 232 (7th Cir. 1996); 29 U.S.C. §§ 203 (m), (o).  However, a collective bargaining

agreement must comply with the FLSA provisions as to wage provisions or overtime compensation, which

cannot be waived via contract.  *See* 29 U.S.C. § 207 (a)(1); *Barrentine v. Ark.-Best Freight Sys., Inc.*,

450 U.S. 728, 739-41 (1981); *Brock v. City of Cincinnati*, 236 F.3d 793, 808-09 (6th Cir. 2001)

(stating that if parties' agreement violated the FLSA, the court cannot enforce it); *Douglas v. Argo-Tech.*

*Corp.*, 113 F.3d 67, 70 (6th Cir. 1997).  Where "an employer agrees to pay for only part of the hours

which an employee is required to work," the contract is invalid.  *F.W. Stock & Sons, Inc. v. Thompson*,

194 F.2d 493, 496, 498-99 (6th Cir. 1952) (holding that work performed during employees' lunch period

was compensable when the employees were maintaining mill machinery, and they were not free to pursue

-22-

Case No. 5:04-CV-0443
Gwin, J.

their own interests). FLSA rights cannot be abridged by contract because this would "nullify the purposes

of the statute and thwart the legislative policies it was designed to effectuate." *Barrentine v. Ark-Best*

*Freight Sys., Inc.*, 450 U.S. 728, 740 (1981) (internal quotation marks omitted).

Just as the employer cannot have a custom or practice that violates the FLSA, so an employer

cannot violate the FLSA by contract, including collective bargaining agreements.  Defendants cannot

contract to avoid the FLSA provision regarding overtime compensation.  Under the FLSA, the employees'

shop time and travel time are compensable, and Akron Insulation must pay overtime compensation where

applicable.  Defendants' interpretation of their collective bargaining agreement excludes payment of travel

time, which violates the wage and overtime provisions of the FLSA.  Such an agreement would be

impermissible and unenforceable.

*D. Remedy*

Having found Defendants in violation of the FLSA's record-keeping and overtime compensation

provisions, the Court awards Plaintiff an injunction against future violations of the overtime (Section 7) and

record-keeping provisions (Section 11) of the Act.  The Court further awards Plaintiff an injunction against

the continued withholding of back wages for overtime compensation in the amount of $94,830.96 plus

interest.

Defendants finally assert that Plaintiff overestimates the number of hours worked and that the clock-

in times are not accurate.  This argument fails.  Because Defendants failed to keep proper records, it is

reasonable for Plaintiff to infer that the clock-in times reflect the amount of hours worked because it

includes shop time and travel time.  The Court may "award damages to the employee, even though the

-23-

Case No. 5:04-CV-0443
Gwin, J.

result be only approximate." *Anderson*, 328 U.S. at 688.  Upon failing to maintain accurate records, the employer cannot complain that the calculation of back wages lack exactness and precision.  Thus, recovery should not be denied because proof of the number of hours worked is inexact because this would penalize the employee.  *E.g., Herman v. Palo Group Foster Home*, 183 F.3d 468, 472-73 (6th Cir. 1999); *see also Hodgson v. Am. Concrete Constr. Co.,* 471 F.2d 1183, 1186 (6th Cir. 1973), *cert. denied*, 412 U.S. 949 (1973).

Ample testimony from employees established that Defendants did not pay them for all hours worked because they routinely did not pay for shop time and travel time.[5/]  The Court finds substantial evidence supporting Plaintiff's calculation of the hours worked as a matter of just and reasonable inference.  From the testimony at trial, Plaintiff reasonably infers that Defendants owe back wages in amounts established by the clock-in times on the time cards.  Although Defendants contend that the Plaintiff overestimates the number of hours worked, Defendants have not offered evidence to show the specific hours actually worked, which is their burden because they failed to maintain accurate records of hours worked.  Even when Defendants paid overtime compensation, they sometimes paid overtime at the wrong rate, paying overtime compensation at the lower of the employees' two rates rather than at the blended rate.  *See* 29 C.F.R. § 778.115.  Thus, Plaintiff showed that the forty-five employees are entitled overtime compensation.

Accordingly, the Court grants judgment for Plaintiff and enjoins violations of Sections 7 and 11 of

---

[5/] Even if the burden did not shift, Defendants could not prevail in this action.  Plaintiff presents sufficient evidence to prove that Defendants' employees were undercompensated and that the clock-in times most accurately represented the hours worked.

-24-

Case No. 5:04-CV-0443
Gwin, J.

the FLSA.  The Court furthermore awards Plaintiff an injunction against the continued withholding of back

wages in the amount of $94,830.96 plus interest.

      IT IS SO ORDERED.


Dated: May 5, 2005                                   s/         *James S. Gwin*
                                                         JAMES S. GWIN
                                                         UNITED STATES DISTRICT JUDGE